[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 99-10801

_____

D. C. Docket No. 92-07185-CV-JAG

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2001
THOMAS K. KAHN
CLERK

RICHARD M. RINALDO, a.k.a.
Muhammed Abdul Muhammed,

Plaintiff-Appellant,

versus

G. CORBETT, Major,
B. LAW, Captain, et. al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 13, 2001)

Before ANDERSON, Chief Judge, FAY and BRIGHT*, Circuit Judges.

_____
*Honorable Myron H. Bright, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

ANDERSON, Chief Judge:

The appellant Richard M. Rinaldo, a/k/a, Muhammed Abdul Muhammed, joined with three other inmates, to file the instant pro se suit under 42 U.S.C. § 1983 against Broward County and individual employees of the County Jail[1] (collectively "Defendants"), alleging that the Defendants violated the inmate's First Amendment rights by, inter alia, failing to provide a pork-free diet and Muslim religious leaders and services. After a trial on the religious diet claim, the jury found in favor of Rinaldo and awarded him ten dollars in damages. Rinaldo, the only plaintiff purporting to appeal to this court, raises a myriad of issues.[2] In this published opinion, we will address only two issues: (1) our appellate jurisdiction; and (2) Rinaldo's claim that the district court erred in declining to enforce his ten-dollar judgment and permitting his award to be applied against a separate liability owed by him to Broward County. After concluding that we have appellate jurisdiction, we reject Rinaldo's argument with respect to the set-off issue. We resolve Rinaldo's other claims in an unpublished appendix to this opinion.

---

[1]The original defendants were: Major Gary Corbett, Captain Barbara Law, Chaplain Rick Braswell, and Lieutenant J. Elkins, Jack Foster and R. McKinley, all of whom were employed at the Broward County Jail at the relevant time.

[2]The other plaintiffs were: Douglas M. Jackson, Sr., Dwayne I. Parker and Mickey L. Saunders. Because only plaintiff-Rinaldo appeals, only facts relevant to him necessitate repetition herein.

Rinaldo was incarcerated at the Broward County Jail as a pretrial detainee on charges of armed robbery and attempted murder from September 4, 1991, through March 26, 1993. After leaving the jail, Rinaldo was arrested and convicted of first degree murder. He is currently on death row, under maximum security, in a Florida prison.

This case arrives here after a seven-year sojourn through the district court, which need not be reiterated in toto. It suffices to explain that this suit was filed on November 23, 1992, originally seeking monetary, injunctive, and declaratory relief. By March 1999 when a jury trial was held, only on the plaintiffs' religious diet claim remained. The jury found in favor of Rinaldo on this issue, and awarded him ten dollars in damages. The trial court entered a final judgment in Rinaldo's favor on March 10, 1999.

Thereafter, Rinaldo filed four post-trial motions. First, on March 19, 1999, Rinaldo filed a motion to tax costs against the Defendants. On the same day, Rinaldo filed a motion to extend the time for filing his notice of appeal. Third, on March 30, 1999, Rinaldo filed a motion for the entry of a declaratory judgment. And, on April 1, 1999, Rinaldo filed a motion to enforce the judgment in his favor.

On April 12, 1999, the district court denied the motion for the entry of declaratory judgment. The following day, April 13, the court denied the motion to

extend the time for filing a notice of appeal.  And, finally, on May 24, the district court granted in part, and denied in part, Rinaldo's motion to tax costs, and denied Rinaldo's motion to enforce the judgment in his favor.

In the meantime, on April 23, Rinaldo filed his first notice of appeal from the March 10 judgment and any and all orders against him or in favor of the defendants.  On June 7, 1999, Rinaldo filed an amended notice of appeal, purporting to appeal all orders listed in his original notice of appeal, as well as the court's May 24th order.

## APPELLATE JURISDICTION

Sua sponte, we must first determine our appellate jurisdiction over the litany of issues Rinaldo raises on appeal.  Rinaldo's April 23, 1999, notice of appeal was untimely as to the judgment entered on March 10, 1999, because the notice was filed more than thirty days from the entry of final judgment on March 10.  See Fed. R. App. P. 4(a)(1)(A) and 26(a)(3).  "This 30-day time limit is 'mandatory and jurisdictional.'"[3]  See Browder v. Dir., Illinois Dep't of Corrections, 434 U.S. 257, 264, 98 S. Ct. 556, 561 (1978).  Thus, in order for us to have appellate jurisdiction over the March 10 judgment and the orders that predate it, Rinaldo must have

---

[3] Specifically, Federal Rule of Appellate Procedure 4(a)(1)(A) explains that "[i]n a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered."

either filed a motion which would toll the appeal period, or he must have filed a document within Rule 4's thirty-day time limit that we may construe as his notice of appeal.

Rinaldo's March 19, 1999, motion for extension of time to file his notice of appeal is the only motion filed within Rule 4's 30-day time frame that might be considered his notice of appeal.[4] In Smith v. Barry, 502 U.S. 244, 112 S. Ct. 678 (1992), the Supreme Court examined whether a pro se appellant's brief could constitute a notice of appeal when filed within the time prescribed by Rule 4. The Court reasoned that Federal Rule of Appellate Procedure "3(c) governs the content of notices of appeal," and that its requirements are to be "liberally construe[d]." Id. at 247-48, 112 S. Ct. at 681. Rule 3(c)(1) explains that a notice of appeal "must . . . (A) specify the party or parties taking the appeal . . . (B) designate the judgment, order, or part thereof being appealed; and (C) name the court to which the appeal is taken." Fed. R. App. P. 3(c)(1). Barry explains that in determining whether a document may be construed as a notice of appeal, we must first ask if "the litigant's action is the functional equivalent of what . . . [R]ule [3] requires." Id. at 248, 112 S. Ct. at 681-82 (quoting Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17

---

[4] Such a motion, however, does not toll the appeal period. See Fed. R. App. P. 4(a)(4) (listing post-trial tolling motions). In light of our decision, we need not address whether or not any of Rinaldo's other post-trial motions toll the appeal period.

5

108 S. Ct. 2405, 2408-09 (1988)).

Next, <u>Barry</u> illuminates the second requirement of Rule 3; an intent component. In so doing, the Court notes that "a notice of appeal must specifically indicate the litigant's intent to seek appellate review, [as] the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts." <u>Id.</u>, 112 S. Ct. at 682. Thus, the touchstone of Rule 3's intent prong is the "the notice afforded by a document, not the litigant's motivation in filing it." <u>Id.</u>, 112 S. Ct. at 682.

In 1993, after <u>Barry</u>, Rule 3(c) was amended, in part, and subdivided. Now, Rule 3(c)(4) directs that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4). Explaining this new subsection, the 1993 Advisory Committee Notes state that:

> Finally, the rule makes it clear that dismissal of an appeal should not occur when it is otherwise clear from the notice that the party intended to appeal. If a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward.

Fed. R. App. P. 3(c), 1993 Advisory Committee Notes. With these changes, it is now "[f]inally . . . clear" that the intent test of Rule 3(c) focuses on whether it is "objectively clear that a party intended to appeal." Therefore, in determining

6

whether a post-judgment motion may be construed as a notice of appeal, the objective intent standard, as well as Rule 3(c)(1)'s three-part requirement, form the proper test.

Applying the Rule 3(c) paradigm in this case, we conclude that Rinaldo's motion for extension of time to file his notice of appeal should be construed as a notice of appeal. First, as required by Barry, Rinaldo's "Notice of Intent/Motion for Enlargement of Time" is the "functional equivalent" of a notice of appeal because it fulfills the three-prong requirement of Rule 3(c)(1). In the motion, Rinaldo specifies the "party . . .taking the appeal, . . . the judgment . . . appealed from . . . and . . . the court to which the appeal is taken." See Fed. R. App. P. 3(c)(1). As for the intent component, we find this "objective" requirement satisfied as well. In the motion, Rinaldo specifically states that "Plaintiff Muhammed gives this Court notice that he intends to appeal . . ."[5] Thus, his motion, filed within the time frame mandated by Rule 4, is the "functional equivalent" of what Rule 3(c)(1) requires.

The Defendants argue that our decision in Harris v. Ballard, 158 F.3d 1164, 1166 (11th Cir. 1998) (per curiam), compels the contrary conclusion, i.e., that the

_____

[5] Specifically, Rinaldo's motion states: "Plaintiff Muhammad gives this court notice that he intends to appeal the jury's award of damages to him and all pretrial orders entered against him and/or in favor of the defendants to the United States Court of Appeals for the Eleventh Circuit."

7

motion to extend the time for filing cannot be construed as the "functional equivalent" of a notice of appeal. We find Harris distinguishable. There, the court construed Harris' motion as an indication of uncertainty as to whether he would in fact appeal. Id. at 1166. By contrast, here, Rinaldo stated unequivocally that he did intend to appeal. His motion reads: "Plaintiff Muhammad gives this court notice that he intends to appeal the jury's award of damages to him and all pretrial orders entered against him and/or in favor of the defendants to the United States Court of Appeals for the Eleventh Circuit." Where it is objectively clear that a party intends to appeal, and each prong of Rule 3(c)(1) is fulfilled, the functional equivalence test is satisfied. See Becker v. Montgomery, 532 U.S. --, 121 S. Ct. 1801, 1808 (2001) ("imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court"). See also United States v. Smith, 182 F.3d 733, 735-36 (10th Cir. 1999) (construing motion for extension of time to file a notice of appeal as the notice of appeal); Haugen v. Nassau County Dept. of Social Services, 171 F.3d 136, 137-38 (2d Cir. 1999) (per curiam) (same); Listenbee v. City of Milwaukee, 976 F.2d 348, 349-51 (7th Cir. 1992) (same). Because the functional equivalent of Rule 3(c)(1) notice was filed within the Rule 4 appeal period, we have appellate jurisdiction over Rinaldo's appeal from the March 10th final judgment and all the

8

orders that pre-date it.  See Akin v. PAFEC Ltd., 991 F.2d 1550, 1563 (11th Cir. 1993) ("When a district court enters a final judgment, 'all prior non-final orders and rulings which produced the judgment' are merged into the judgment and subject to review on appeal.").

Furthermore, because Rinaldo filed a notice of appeal on April 23, we have jurisdiction over the district court's April 12 order denying Rinaldo's request for the entry of declaratory judgment.  See Fed. R. App. P. 4(a)(1)(A).  And, finally, we have appellate jurisdiction over the district court's May 24th order because Rinaldo filed an amended notice of appeal on June 7, 1999.  See id.  For the foregoing reasons, we conclude that we have appellate jurisdiction over all the issues that Rinaldo raises on appeal.

**SET-OFF ISSUE**

After the jury found for Rinaldo on his religious diet claim and awarded him ten-dollars in damages, Rinaldo filed a motion to enforce the ten-dollar damage award.  In this motion, Rinaldo asked the district court to forbid Broward County from attaching or taking any of his ten-dollar award to satisfy the $250,000.00 civil restitution lien entered against Rinaldo and in favor of Broward County as reimbursement for incarceration costs for capital offenders pursuant to Fla. Stat. §

9

960.293(2)(a).[6] The district court denied Rinaldo's motion.

On appeal, Rinaldo argues that the district court erred in declining to enforce the jury's ten dollar compensatory damage award under Hankins v. Finnell, 964 F.2d 853 (8th Cir. 1992). He argues that, under Hankins, his award pursuant to 42 U.S.C. § 1983 preempts his state civil restitution lien.

In Hankins, a state inmate brought suit against a Missouri prison employee for sexual harassment, and the jury awarded the inmate $1.00 in nominal damages and $3,000.00 in punitive damages. See id. at 854. After the judgment, the state of Missouri filed suit seeking to apply the inmate's § 1983 award to pay the costs of his incarceration under Missouri's Incarceration Reimbursement Act ("Act"). In a divided panel decision, the Eighth Circuit held that "[t]o the extent that the Act permits the State to recoup the very monies it has paid to satisfy a section 1983 judgment against one of its employees, the Act is invalidated under the Supremacy Clause." Id. at 861. Hankins reasons that "[t]o allow the State to largely recoup this award would be inimical to the goals of the federal statute" which are to

---

[6] Fla. Stat. § 960.293(2)(a) (1996), provides that a defendant convicted of a "capital or life felony," is "liable for incarceration costs and other correctional costs in the liquidated damage amount of $250,000." Under Fla. Stat. § 960.292(2), " . . . upon petition of the local subdivision . . . the court . . . shall enter civil restitution lien orders in favor of the . . . local subdivisions . . . " On July 30, 1998, then-Sheriff of Broward County, Ken Jenne, obtained a $250,000.00 civil restitution lien against Rinaldo, and in favor of Broward County, under Fla. Stat. § 960.293, in the Circuit Court of the 17th Judicial Circuit of Florida. See Jenne v. Muhammed, No. 98-12262(09) (Fla. Cir. Ct. 1998).

10

"compensate victims and to deter future deprivations of federal constitutional rights." Id. The Eighth Circuit therefore held that the inmate's §1983 award preempted the state law lien "as it applied in th[at] case." Id.

We need not address Rinaldo's argument under Hankins that a money judgment for a § 1983 plaintiff cannot be used to satisfy a civil restitution lien for incarceration costs under Fla. Stat. § 960.293. At the conclusion of Rinaldo's trial, costs far in excess of his ten-dollar verdict were assessed against him by the district court pursuant to Federal Rule of Civil Procedure 68[7] because Rinaldo rejected the Defendants' offer of judgment.[8] See Fed. R. Civ. P. 68. Rindalo owed these costs to the Defendants notwithstanding his ten-dollar damage award. Under such

---

[7]Federal Rule of Civil Procedure 68 provides, in relevant part, that:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . . An offer not accepted shall be deemed withdrawn . . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer.

[8]Prior to the jury trial, the Defendants made a written offer of judgment to Rinaldo in the amount of $1,001.00 pursuant to Rule 68. Rinaldo refused the offer and elected to proceed to trial where the jury awarded him ten-dollars. After trial, the Defendants filed a motion to tax costs incurred after Rinaldo rejected the Defendants' offer of judgment with supporting affidavits listing $802.02 in post-offer costs. The district court found that, although Rinaldo was the prevailing party, Rinaldo rejected the Defendants' offer of judgment and was awarded less than the amount of the offer. The district court concluded that, under such circumstances, Rule 68 required Rinaldo to pay the Defendants' post-offer costs totaling $802.02. Thus, the court entered an order requiring Rinaldo to pay $802.02 in costs to the Defendants.

11

circumstances, we readily conclude that it is appropriate to apply Rinaldo's ten-dollar money judgment toward Rinaldo's liability to the County for costs arising out of the same case.  The judgment of the district court declining to enforce Rinaldo's ten-dollar judgment and refusing to require the County to pay the ten-dollar judgment to Rinaldo is affirmed on this alternative ground.  In light of this disposition, we need not address the <u>Hankins</u> issue raised by Rinaldo.[9]

## CONCLUSION

For the foregoing reasons, the judgment of the district court with respect to these issues is AFFIRMED.[10]

---

[9] We do note, however, that the Eighth Circuit has limited <u>Hankins</u> by holding that an inmate's § 1983 award may constitutionally be applied to a victim restitution lien imposed on an inmate's assets because such an application is not inimical to the goals of § 1983. <u>See</u> <u>Beeks v. Hundley</u>, 34 F.3d 658 (8th Cir. 1994).

[10] The rest of Rinaldo's arguments on appeal are addressed in a separate, unpublished appendix, which also affirms the district court's judgment with respect to Rinaldo's other claims. Thus, the judgment of the district court is affirmed.